# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MAINLINE INFORMATION SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 1264 |
| | ) | |
| MARK BENKENDORF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we deny the motion to dismiss in its entirety.

## BACKGROUND

Plaintiff Mainline Information Systems, Inc. (Mainline) is a company that markets information technology (IT) products and services. Mainline alleges that on July 29, 2002, Mainline hired Defendant Mark Benkendorf (Benkendorf) as an Account Executive, and eventually promoted him to the position of Regional Vice President. Mainline claims that as Regional Vice President, Benkendorf supervised

1

Defendant Terry Rombalski (Rombalski), Defendant Jack Wachowiak (Wachowiak), Defendant Don Carlquist (Carlquist), Defendant Rosendo Arroyo (Arroyo), and Defendant John Suehr (Suehr), who were Account Executives at Mainline, and Defendant Jacqueline Lynch (Lynch), Defendant Mike Meyer (Meyer), and Defendant Jignesh Patel (Patel), who were Systems Engineers at Mainline. According to Mainline, "[a]ll individual Defendants had sales and customer relationship responsibilities to Mainline." (Compl. Par. 1).

Mainline states that on April 29, 2009, it informed Benkendorf that Benkendorf's position might be eliminated due to a company reorganization at Mainline. Mainline alleges that soon after that date, Benkendorf engaged in a conspiracy with the other individual Defendants to unlawfully solicit Mainline's customers and employees away from Mainline for the benefit of Defendant Forsythe Solutions Group, Inc. (Forsythe), who is a direct competitor of Mainline. Mainline claims that in furtherance of the alleged conspiracy, Benkendorf "secretly and without authority" excluded certain customers from the restricted covenants contained in Rombalski's and Wachowiak's employment agreements for the purpose of targeting those customers. (Compl. Par. 5). Mainline also claims that on May 20, 2009, Benkendorf offered to release Carlquist from all restrictive covenants contained in Carlquist's employment agreement if Carlquist decided to leave

Mainline.

Benkendorf's last day of work at Mainline was allegedly May 29, 2009. Mainline claims that after Benkendorf was terminated by Mainline, he began working for Forsythe. Mainline also claims that after Benkendorf's termination, Benkendorf "engaged in an unlawful campaign of unfair competition by soliciting Mainline's customers and employees and disclosing and using Mainline's trade secrets and confidential information" for his own benefit and for the benefit of Forsythe. (Compl. Par. 7). Mainline alleges that the employees who left Mainline to work for Forsythe have also allegedly solicited Mainline's customers and disclosed and used Mainline's trade secrets and confidential information in violation of their employment agreements and Illinois law.

On February 24, 2010, Mainline filed the instant action. Mainline includes in its complaint claims for conspiracy brought against all Defendants (Count I), claims for unlawful solicitation of employees brought against Benkendorf and Wachowiak (Counts II and XIV), claims for unlawful competition brought against Benkendorf, Wachowiak, Lynch, Meyer, and Patel (Counts III, XVI, XXIII, XXXIII, and XXXVI), claims for breach of employee fiduciary duty brought against Benkendorf, Rombalski, Wachowiak, Carlquist, Lynch, Arroyo, Meyer, Patel, and Suehr (Counts IV, VIII, XII, XVII, XXI, XXVI, XXXI, XXXV, and XXXIX), claims for violation of the Illinois Trade Secrets Act (ITSA), 765 ILSC 1060 *et seq*., brought against

Benkendorf, Rombalski, Wachowiak, Carlquist, Lynch, Arroyo, Meyer, Patel, and Suehr (Counts V, XI, XV, XX, XXV, XXIX, XXXIV, XXXVIII, and XLI), a claim for intentional interference with employment agreements (IIEA) brought against Forsythe (Count VI), a claim for tortious interference with a business expectancy (TIBE) brought against Forsythe (Count VII), claims for unlawful solicitation of customers brought against Rombalski, Wachowiak, Carlquist, Lynch, Arroyo, and Meyer (Counts IX, XIII, XVIII, XXII, XXVII, and XXXII), claims for breach of trade secrets and confidential information covenants brought against Rombalski, Carlquist, Lynch, Arroyo, Patel, and Suehr (Counts X, XIX, XXIV, XXVIII, XXXVII, and XL), and a claim for violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 *et seq.*, brought against Arroyo (Count XXX). Defendants have moved to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

I. Choice of Law

The parties have agreed that Illinois law should apply to the instant action, despite the Florida choice of law provisions found in the employment agreements at issue. Defendants are all citizens of Illinois, and the events giving rise to Mainline's claims allegedly occurred in Illinois. Based on the record and the parties' agreement, we will apply Illinois law. We note that even if we were to apply Florida law, the result would be the same.

II. Conspiracy Claims

Mainline has alleged that the Defendants participated in a conspiracy to unfairly and unlawfully compete with Mainline. Defendants have moved to dismiss

the conspiracy claims, arguing that the claims fail as a matter of law, and that the facts alleged are insufficient to survive the plausibility analysis articulated in *Twombly*, 550 U.S. at 570, and *Iqbal*, 129 S.Ct. at 1949. Defendants also contend that the conspiracy claim against Forsythe must be dismissed since the individual Defendants are employees of Forsythe.

### A. Effect of Benkendorf's Termination Without Cause

Defendants argue that since Mainline's allegations indicate that Benkendorf was terminated without cause, the restrictive covenants contained in Benkendorf's employment agreement are unenforceable, and therefore the conspiracy claims fail as a matter of law. (Rep. at 7). Defendants misstate the terms of Benkendorf's employment agreement, which we note is attached to the complaint and is therefore part of the pleadings pursuant to Federal Rule of Civil Procedure 10(c) (Rule 10(c)). Benkendorf's employment agreement provides only that the customer non-solicitation clause becomes unenforceable if Benkendorf is terminated without cause. (Compl. Ex. A Par. 9(A)). The other restrictive covenants contained in Benkendorf's employment agreement remained in effect regardless of the circumstances surrounding Benkendorf's separation from the company. The conspiracy claims involve, among other things, Benkendorf's alleged unlawful

solicitation of Mainline's employees and unlawful use of Mainline's trade secrets, both of which are prohibited by Benkendorf's employment agreement. (Compl. Par. 50-55). Thus, Defendants are mistaken in arguing that the conspiracy claims fail based upon Benkendorf's termination without cause.

### B. Sufficiency of Pleadings

Defendants also argue that Mainline's conspiracy claims against Defendants must be dismissed because Mainline has failed to allege the names of customers and employees solicited, the confidential information taken, details regarding when each co-conspirator joined the conspiracy, and what overt actions each took in furtherance of the conspiracy. For a claim of civil conspiracy under Illinois law, a plaintiff must show "(1) an agreement; (2) by two or more persons; (3) to perform an overt act or acts; (4) in furtherance of the agreement/conspiracy; (5) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (6) that causes injury to another." *Bressner v. Ambroziak*, 379 F.3d 478, 483 (7th Cir. 2004)(citation omitted). Unless a civil conspiracy claim involves allegations of fraudulent conduct, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) does not apply. *See Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 507-09 (7th Cir. 2007)(stating that whether Rule 9(b) applies to a civil conspiracy claim "will depend

on the plaintiffs' factual allegations" and whether such allegations "sound in fraud")(citations omitted).

Mainline has alleged sufficient facts to support its conspiracy claims. Mainline has alleged that each Defendant was involved in the conspiracy, and that in furtherance of the conspiracy, each Defendant committed unlawful overt acts, including the unlawful solicitation of Mainline's customers and employees and the unlawful use and disclosure of Mainline's trade secrets and confidential information. (Compl. Par. 8-10, 225-231). Mainline has also alleged that Defendants committed such unlawful overt acts to unlawfully compete with Mainline, and that as a result, Mainline has suffered damages. (Compl. Par. 4, 232).

Contrary to Defendants' assertions, Mainline need not allege facts specifying when each Defendant entered the conspiracy or the specific terms of the conspiratorial agreement. The case cited by the Defendants in support of their argument, *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999), is distinguishable from the instant action. In *Ryan,* the plaintiff had not alleged that the defendant at issue committed any overt act related to the search at issue, and instead only stated that the defendant at issue "conspired" with those that performed the search. *Id.* at 859-60. In contrast, Mainline has alleged specific overt acts undertaken by each Defendant in connection with and in furtherance of the

alleged conspiracy. Also, in *Ryan*, it was not apparent from the allegations in the

complaint how or why the defendant at issue would have been involved in the

conspiracy, whereas in this case, it is apparent. The allegations in the complaint set

forth the general scope of the conspiracy and the role of each Defendant in the

conspiracy. Based on the above, Mainline has alleged sufficient facts relating to its

conspiracy claims.

C. Plausibility Analysis

Defendants have argued that Mainline's conspiracy claims should be

dismissed because Mainline's conspiracy claims cannot survive because they do not

meet the federal pleading standard.

1. Benkendorf's Authority to Alter Employment Agreements

Defendants argue that Mainline's conspiracy claims fail because the claims

are based on allegations that Benkendorf was without authority to approve

exclusions to the customer non-solicitation provisions contained in several

employment agreements at issue. According to Defendants, such allegations are

contradicted by other allegations in the complaint. Defendants specifically point to

portions of Mainline's complaint indicating that Benkendorf "was responsible for

recruiting and managing sales persons," that Benkendorf was "a highly trusted and regarded senior management team member" who "exercised substantial discretion and independent judgment in the performance of his duties." (Compl. Par. 33). Defendants also point out that Benkendorf had, in the past, negotiated and signed employment agreements with Mainline's knowledge and approval. (Mot. at 8). Such allegations and Mainline's approval of Benkendorf's past negotiations do not contradict Mainline's allegations that Benkendorf did not have authority to approve the specific changes at issue in this case. As discussed above, at this stage of the proceedings, the court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Iqbal*, 129 S.Ct. at 1949; *Thompson*, 300 F.3d at 753. Therefore, in ruling on the motion to dismiss, we accept Mainline's allegation that Benkendorf altered certain employment agreements without authority.

### 2. Catalyst for the Conspiracy

In further support of their arguments that Mainline's allegations do not satisfy the federal pleading standard, Defendants attempt to cast doubt upon Mainline's allegation that the catalyst for the conspiracy was Mainline's April 29, 2009 indication (Statement) to Benkendorf that his position might be eliminated.

Defendants argue that the Statement would have led Benkendorf to "work harder" to save his job or to obtain "another position in the company, rather than commit job suicide by developing a traitorous scheme." (Reply 9). Defendants also point to Mainline's allegation that Benkendorf was offered continued employment at Mainline in a different capacity, which Defendants contend undermines Mainline's assertion regarding the Statement as catalyst for the conspiracy. While that may be Defendants' inference from the facts alleged, Mainline has alleged sufficient facts relating to their conspiracy claims. When ruling on a motion to dismiss, the court must make reasonable inference in favor of the plaintiff. Therefore, the allegation that Mainline offered Benkendorf the opportunity to stay with Mainline after the reorganization does not defeat Mainline's conspiracy claims. Taking the allegations in the complaint as true and in a light most favorable to Mainline, it is plausible that the Statement to Benkendorf created a motive for Benkendorf to initiate the alleged conspiracy.

### 3. Free-Market Behavior

Defendants also argue that Mainline's conspiracy claims fail under the federal pleading standards because the individual Defendants' behavior is more likely innocent and lawful conduct explained by free-market behavior. Defendants point

out that the individual Defendants were all at-will employees who were negatively affected by Mainline's corporate restructuring in various ways, and that the individual Defendants separately and independently departed Mainline at different times. However, Mainline has alleged sufficient connections between the Defendants, as well as close enough temporal proximity in the individual Defendants' departures from Mainline and employment at Forsythe to plausibly suggest Defendants were acting in concert with one another.

### D. Claim against Forsythe

Defendants also argue that Mainline's conspiracy claim against Forsythe must be dismissed because Mainline has alleged that the individual Defendants were all employees of Forsythe at the time Forsythe allegedly undertook any overt unlawful acts. Defendants are correct that, as a matter of law, there can be no civil conspiracy between a principal and its agents. *Edelman, Combs & Latturner v. Hinshaw & Culbertson,* 788 N.E.2d 740, 752 (Ill. App. Ct. 2003)(citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 570 (Ill. 1998)). However, at this stage of the proceedings, allegations plausibly suggest the possibility that the individual Defendants committed acts in furtherance of the conspiracy prior to their employment with Forsythe, and were thus not acting as agents of Forsythe. Based

on the above analysis as to all Defendants, we deny Defendants' motion to dismiss Mainline's conspiracy claims against Defendants (Count I).

III.  Unlawful Solicitation of Employees Claims

Defendants argue that Mainline's claims against Benkendorf and Wachowiak for unlawful solicitation of employees must be dismissed.

A.  Effect of Benkendorf's Termination Without Cause

According to Defendants, Benkendorf's alleged termination without cause negates any claim against Benkendorf for unlawful solicitation of employees.  Under the terms of his employment agreement, Benkendorf was prohibited from "recruiting or soliciting any person who is or was an employee of [Mainline]," regardless of whether Benkendorf was terminated without cause.  (Compl. Ex. A Par. 8-9). Therefore, the allegations related to Benkendorf's termination without cause have no effect on Mainline's claim against Benkendorf for unlawful solicitation of employees.

B.  Sufficiency of Pleadings

Defendants also argue that Mainline's claims against Benkendorf and

Wachowiak for unlawful solicitation of employees should be dismissed because Mainline fails to allege the names of the specific employees that were recruited, the specific behavior that constituted recruitment, and whether Benkendorf and/or Wachowiak were successful in their recruitment. Such specific allegations are not required at this juncture. Moreover, it can clearly be inferred from Mainline's complaint that at least some of the employees that Benkendorf and Wachowiak allegedly solicited or recruited are the other individual Defendants who now work for Forsythe. (Compl. Par. 8, 9). Based on the above, we deny Defendants' motion to dismiss the claims brought against Benkendorf and Wachowiak for unlawful solicitation of employees (Counts II and XIV).

IV. Unlawful Competition Claims

Defendants argue that Mainline's claims against Benkendorf, Wachowiak, Lynch, Meyer, and Patel for unlawful competition must be dismissed.

A. Effect of Benkendorf's Termination Without Cause

According to Defendants, Benkendorf's alleged termination without cause precludes Mainline from successfully alleging a claim against Benkendorf for unlawful competition. In pleading the unlawful competition claim against

Benkendorf, Mainline alleges that Benkendorf engaged in unlawful solicitation of Mainline's employees and used and disclosed Mainline's trade secrets and confidential information. Once again, we observe that according to the pleadings, the circumstances surrounding Benkendorf's termination from Mainline affected only the customer non-solicitation restrictive covenant in Benkendorf's employment agreement. Mainline's alleged termination of Benkendorf without cause did not affect the non-competition provision of Benkendorf's employment agreement, which in part relates to the use of Mainline's trade secrets and confidential information. Nor did Mainline's alleged termination of Benkendorf without cause affect the employee non-solicitation provision of Benkendorf's employment agreement, which prohibited Benkendorf from recruiting or soliciting Mainline's employees. Therefore, Benkendorf's alleged termination without cause does not defeat Mainline's claim against Benkendorf for unlawful competition.

B.  Applicability of Non-Competition Clauses

Defendants argue that the unlawful competition claims against  Benkendorf, Wachowiak, Lynch, Meyer, and Patel should be dismissed because the non-competition clauses in the employment agreements of Benkendorf, Wachowiak, Meyer, and Patel only prohibit competition "individually or on behalf of any IBM

Tier One Solution Provider or an IBM S/390, AS/400, or RS/6000 Business Partner, person, firm, corporation or other entity in the Business,"and the non-competition clause in Lynch's employment agreement only prohibits competition "individually, or on behalf of any IBM Tier One Solution Provider or an RS/6000 Business Partner."  (Compl. Ex. A Par. 6, Compl. Ex. D Par. 6, Compl. Ex. G Par. 7, Compl. Ex. J Par. 7, Compl. Ex. K Par. 7).  The parties disagree as to whether the non-competition provisions preclude Benkendorf, Wachowiak, Lynch, Meyer, and Patel from working for Mainline's direct competitor, Forsythe.  The agreements on their face do not resolve the unlawful competition claims.  Therefore, it is premature to dismiss Mainline's claims for unlawful competition at this juncture.  *See Dawson v. General Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992)(stating that "[i]f the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss")(internal quotations omitted)(quoting *Quake Construction, Inc. v. American Airlines, Inc.,* 565 N.E.2d 990, 994 (Ill. 1990)); *Chemetall GMBH v. ZR Energy, Inc.,* 320 F.3d 714, 721 (7th Cir. 2003)(stating that "[t]he intent of the parties is a question of fact to be derived not only from the instrument executed by the parties, but also from the surrounding circumstances")(internal quotations omitted)(quoting *Young v. Chicago Fed. Sav. & Loan Ass'n,* 535

N.E.2d 977, 979 (Ill. App. Ct. 1989)).  Therefore, we deny Defendants' motion to dismiss the unlawful competition claims (Counts III, XVI, XXIII, XXXIII, and XXXVI).


## V.   Breach of Fiduciary Duty Claims

Defendants have moved to dismiss the breach of fiduciary duty claims against all individual Defendants.  Under Illinois law, to establish a claim for breach of fiduciary duty, a plaintiff must establish the existence of a fiduciary relationship between the parties, that the defendant owed a duty to the plaintiff, that the defendant breached its duty, and that the plaintiff was harmed as a result of the breach.  *Adams v. Catrambone*, 359 F.3d 858, 866 (7th Cir. 2004)(citing *Chicago City Bank & Trust Co. v. Lesman,* 542 N.E.2d 824, 826 (Ill. App. Ct. 1989)).


### A.  Claim against Carlquist

Defendants argue that the breach of fiduciary duty claim brought against Carlquist must be dismissed because Carlquist's employment agreement was superseded by a separation agreement.  However, the fiduciary duties Carlquist owed to Mainline were not merely established through Carlquist's employment agreement.  Regardless of whether Carlquist was subject to an employment

agreement or breached such an agreement, whether Carlquist breached the fiduciary duties he owed to Mainline is a separate question.  In addition, the separation agreement that allegedly superseded Carlquist's employment agreement contains many of the same or similar restrictive covenants as the employment agreement itself.  (Compl. Ex. E Par. 6-8, Compl. Ex. F Par. 3(h), 3(I), 3(j)).  Thus, the superseding separation agreement does not support Defendants' argument that Mainline has not pled a valid breach of fiduciary duty claim against Carlquist.

### B.  Claims against all Individual Defendants

Defendants also argue that Mainline has failed to state a claim for breach of fiduciary duty against any of the individual Defendants because Mainline has failed to allege specific facts that form the bases for the breach of fiduciary duty claims, such as exactly which customers were solicited and which trade secrets were disclosed.  As explained above, Mainline is not required to provide the detailed information that Defendants demand.  Mainline has provided sufficient facts to give Defendants clear notice of the general conduct within the alleged conspiracy that amounts to a breach of fiduciary duty.  In addition, the production of detailed information, under certain circumstances, might be more appropriate after entry of a protective order.  We note that Defendants also present certain arguments

concerning whether individual Defendants breached the terms of their employment agreements. As discussed above, regardless of whether Defendants had employment agreements or breached such agreements, whether they breached the fiduciary duties they owed to Mainline is a separate question. Based on the above, we deny Defendants' motion to dismiss the breach of fiduciary duty claims brought against individual Defendants (Counts IV, VIII, XII, XVII, XXI, XXVI, XXXI, XXXV, and XXXIX).

## VI.   ITSA Claims

Defendants argue that Mainline's claims against the individual Defendants for violations of ITSA should be dismissed because, according to Defendants, Mainline has not alleged what material Defendants allegedly misappropriated, nor what steps Mainline took to protect the allegedly misappropriated information. In so arguing, Defendants ignore Mainline's identification of the misappropriated trade secrets and confidential information and the allegations found throughout the complaint relating to the steps Mainline takes to protect such information. For example, Mainline has alleged its trade secrets and confidential information include customer proposals, assignments at client sites, customer communications, and payment issues. (Compl. Par. 28). Mainline has also alleged the importance of its customer relationships and

the confidentiality of its customer lists.  (Compl. Par. 27, 29).  Mainline has further

alleged that to protect its trade secrets, confidential information, and customer

relationships, Mainline has multiple policies, procedures, and agreements in place,

including employment agreements such as the ones at issue in the instant action.

(Compl. Par. 27-30).  In addition, Mainline has alleged that the individual

Defendants have disclosed and used Mainline's trade secrets and confidential

information.  (Compl. Par. 54-55, 67, 88, 91-92, 110, 113-14, 134-35, 154-55, 173-

74, 222-23, 506-07).

Defendants also argue that Mainline has not alleged that the individual

Defendants left Mainline with any trade secrets, and that therefore Mainline has no

basis to conclude that individual Defendants are using any such information.

Mainline is not required to make such allegations, and such allegations can be

inferred from the allegations in the complaint.  In addition, Mainline has alleged that

at least one Defendant unlawfully forwarded emails and work requirements to

Forsythe.  (Compl. Par. 110).

Defendants also argue that Mainline's trade secret claims are contradictory

because Mainline alleges that it keeps its confidential and trade secret information

on its computer systems and that it protects such information, which precludes the

inference that former employees have access to such information.  Once again,

Defendants have argued that one particular allegation disproves, or is mutually exclusive to, other allegations in the complaint. However, Mainline specifically alleges that "[t]o serve Mainline's customers, Account Executives and Systems Engineers at Mainline have access to Mainline's computer systems that are used to track and store confidential client information, make proposals to customers, monitor assignments at client sites, communicate with customers, and manage payment issues." (Compl. Par. 28). In addition, the individual Defendants acknowledged that they would have access to Mainline's trade secrets and confidential information in the employment agreements they signed. (Compl. Ex. A Par. 6, Compl. Ex. B Par. 6, Compl. Ex. C Par. 6, Compl. Ex. D Par. 6, Compl. Ex. E Par. 6, Compl. Ex. F Par. 3(h), Compl. Ex. G Par. 6-7, Compl. Ex. H Par. 6, Compl. Ex. I Par. 6, Compl. Ex. J Par. 6, Compl. Ex. K Par. 6-7, Compl. Ex. L Par. 6, Compl. Ex. M Par. 6-7, Compl. Ex. N Par 6). Thus, the pleadings clearly indicate that the individual Defendants had access to Mainline's trade secrets and confidential information while working for Mainline. Based on the above, we deny Defendants' motion to dismiss the ITSA claims brought against individual Defendants (Counts V, XI, XV, XX, XXV, XXIX, XXXIV, XXXVIII, and XLI).

VII.   IIEA Claim (Count VI)

Defendants argue that Mainline has failed to allege sufficient facts to state an

IIEA claim against Forsythe.  Under Illinois law, for the "tort of intentional

interference with existing contract rights," a plaintiff must establish: "(1) the

existence of a valid and enforceable contract between the plaintiff and another; (2)

the defendant's awareness of this contractual relation; (3) the defendant's intentional

and unjustified inducement of a breach of the contract; (4) a subsequent breach by

the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI

Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill.

1989)(quoting *Belden Corp. v. InterNorth, Inc.*, 413 N.E.2d 98 (Ill. App. Ct.

1980))(internal quotations omitted).


A.  Existence and Awareness of Employment Agreements

In the instant action, Mainline alleges that the individual Defendants had

entered into employment agreements with Mainline.  (Compl. Par. 2, 4-5, 10, 34,

264).  Mainline alleges facts that plausibly suggest that Forsythe was aware of the

employment agreements entered into by Mainline and the individual Defendants.

(Compl. Par. 4-8).  For example, Mainline alleges that Benkendorf violated his own

employment agreement when acting on behalf of Forsythe.  (Compl. Par. 51-52).

Also, Benkendorf  allegedly had knowledge of Mainline's employment agreements

with the other individual Defendants, and Benkendorf played an active role in allegedly inducing the other individual Defendants to violate their employment agreements. (Compl. Par. 7, 50-51).

Mainline also alleges that Forsythe knew or should have known that the individual Defendants would be restricted by employment agreements they entered into while working for Mainline. (Compl. Par. 59-64, 264-69). Defendants argue that allegations that a defendant knew or should have known of an agreement are sufficient only for a negligent interference with contractual relations claim, which Defendants contend is not a recognized cause of action in Illinois. (Mot. 8). However, as indicated above, Mainline has alleged sufficient facts, accepted as true at this stage of the proceedings, *Iqbal*, 129 S.Ct. at 1949, to plausibly suggest that Forsythe had actual knowledge of the fact that the Mainline employees who Forsythe allegedly covertly recruited had entered into employment agreements with Mainline. Thus, Mainline has alleged facts to suggest more than mere negligent interference with the employment agreements.

B. Inducement

Mainline has alleged that Forsythe induced individual Defendants to breach their employment contracts. (Compl. Par. 270). Defendants contend that Mainline's

use of the term "inducement" is too general to suffice for an IIEA claim. (Mot. 7).

The allegations plausibly suggest that Forsythe may have induced Benkendorf and

other employees of Mainline to enter into the alleged conspiracy. Mainline offers

facts, in addition to a general allegation of "inducement," to suggest that once

Benkendorf was working for Forsythe and acting on Forsythe's behalf, Benkendorf

induced other individual Defendants to leave Mainline to work for Forsythe in

violation of the terms of their employment agreements. For example, Mainline

alleges that Benkendorf, acting on behalf of Forsythe, recruited the other individual

Defendants to leave Mainline and work for Forsythe, and that once they began

working for Forsythe, they were induced to violate their employment agreements,

such as by disclosing Mainline's trade secrets. (Compl. Par. 4, 7, 269). Mainline

also explains that the alleged reason why Forsythe induced Mainline's former

employees to breach their employment agreements was so that Forsythe could gain

an unlawful competitive advantage over Mainline, its direct competitor. (Compl.

Par. 4). Mainline also makes it clear in the complaint that the alleged inducement of

the individual Defendants, other than Benkendorf, was intentional and unjustified.

(Compl. Par. 4). Thus, Mainline sufficiently explains how Forsythe allegedly

induced the individual Defendants to breach their employment contract. Mainline is

not required to present more specificity at the pleadings stage, nor every detail of the

alleged conspiracy since Mainline cannot be expected to possess such facts until it has had an opportunity to conduct discovery in this case. At the summary judgment stage, Mainline will have to point to sufficient evidence to show that Forsythe in fact induced Benkendorf and/or the other individual Defendants.


### C. Breach Caused by Forsythe and Damages

Mainline alleges that Forsythe recruited the individual Defendants to leave Mainline and work for Forsythe, which in itself indicates Forsythe induced individual Defendants to violate the non-competition restrictive covenants contained in their employment agreements. In addition, Mainline alleges that once Forsythe was able to recruit the individual Defendants, Forsythe induced individual Defendants to breach other terms of their employment agreements in order to further Forsythe's interests. (Compl. Par. 4). It is clear from the allegations that the breaches occurred not on the individual Defendants' own initiative, but that the breaches were allegedly the product of Forsythe's inducement and encouragement of its new employees. (Compl. Par. 7). We note that Defendants have argued that the pleadings show that they did not breach certain provisions of their employment agreements, such as the non-competition restrictive covenants. However, even if Defendants are correct, there are allegations that individual Defendants also

breached other provisions of the employment agreements, such as the non-solicitation and trade secret provisions, which are sufficient to support an IIEA claim. Mainline also alleges that it suffered damages as a result of the inducement and that Mainline will inevitably suffer further damages if, for example, Defendants continue their alleged unlawful use of Mainline's trade secrets or if Defendants continue their alleged unlawful solicitation of Mainline's customers. (Compl. Par. 272). Thus, Mainline has alleged sufficient facts to state an IIEA claim against Forsythe, and we deny the motion to dismiss the IIEA claim (Count VI).

## VIII.   TIBE Claim (Count VII)

Defendants argue that Mainline has not alleged sufficient facts for a TIBE claim. For an intentional interference with prospective economic advantage claim under Illinois law, a plaintiff must establish: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001)(quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296 (Ill. 1996)).

In the instant action, Mainline alleges that it had an expectancy of continued business with certain customers. (Compl. Par. 25-26, 272, 278-80). Mainline also alleges facts that plausibly suggest that Forsythe had knowledge of Mainline's business expectancies through Benkendorf and the other Mainline employees who Forsythe allegedly covertly recruited from Mainline. (Compl. Par. 4, 7-10, 25-29, 275). Mainline also clearly alleges that it suffered damages, and it is apparent that Mainline would incur damages if it was deprived of its business expectations. (Compl. Par. 25-26, 272, 278-80). Defendants argue that Mainline has failed to state a claim since Mainline has not provided a list of the specific customers that are the basis for the claim, or the specific business expectancies that were lost by Mainline. However, such specificity is not required at the pleadings stage. Nor can Mainline be expected to have knowledge prior to discovery of exactly which customers and what business was allegedly diverted from Mainline by Defendants' alleged covert unlawful conduct. Mainline also points out that its customer lists would be deemed trade secret information and the inclusion of such information in the complaint would likely require a protective order. (Compl. Par. 28-29). Under Defendants' theory of pleading, Mainline would have been required to come before the court seeking a protective order before Mainline even filed its complaint.

Defendants also argue that Mainline cannot claim the need for a protective

order since the employment agreements attached to the complaint include the names of various customers who are excluded from the customer non-solicitation restrictive covenants. However, disclosure of customers excluded from the customer non-solicitation restrictive covenants is different from disclosure of customers that are covered by such restrictive covenants since Mainline's proprietary interest is different with respect to each group. Therefore, Defendants' argument that Mainline's disclosure of the customers excluded from the non-solicitation restrictive covenants creates a general waiver with respect to the confidential nature of Mainline's customer lists is unpersuasive.

Defendants also argue that Mainline is not entitled to have a permanent relationship with its customers. (Mot. 10). Defendants argue that Mainline does not state a valid TIBE claim simply because Mainline lost its customers to Forsythe, a direct competitor. However, Mainline alleges more than that it simply lost its customers to a competitor in the marketplace. Mainline alleges that Forsythe engaged in a covert scheme to unlawfully obtain Mainline's customer lists, contact personnel that had worked with the customers at Mainline, and steal Mainline's customers. Such allegations are sufficient to state a TIBE claim. Therefore, we deny the motion to dismiss the TIBE claim (Count VII).

## IX.   Unlawful Solicitation of Customers Claims

Defendants argue that Mainline's claims should be dismissed.

### A.  Claim against Carlquist

Defendants argue that the unlawful solicitation of customers claim against Carlquist must be dismissed because Carlquist's employment agreement was superseded by a separation agreement.  However, the separation agreement that allegedly superseded Carlquist's employment also contains a customer non-solicitation restrictive covenant that prohibits Carlquist from soliciting, calling upon, or communicating with any customer or prospect of Mainline, other than Allstate, for a period of one year following termination of Carlquist's employment. (Compl. Ex. F Par 3(I)).  Thus, the superseding separation agreement does not support Defendants' argument that Mainline has not pled a valid unlawful solicitation of customers claim against Carlquist (Count XVII).

### B.  Claims against Carlquist and Other Employees

Defendants argue that Mainline's claims for unlawful customer solicitation against Carlquist, Rombalski, Wachowiak, Lynch, Arroyo, and Meyer fail because Mainline has not alleged which customers Defendants solicited, which Defendants claim is necessary to adequately put Defendants on notice of the claims against

them.  Defendants also point out that among the individual Defendants, there are more than 70 customer exclusions from the customer solicitation restrictive covenants at issue.  Defendants contend that Mainline's refusal to identify which customers the individual Defendants allegedly improperly solicited makes it impossible to determine whether the customer solicitations were really improper.  Defendants also argue that Mainline's claim that Mainline need not provide notice regarding which customers were contacted by whom because such information is a trade secret has been waived.

Mainline has made sufficient allegations to state a claim for unlawful customer solicitation.  While Mainline has not named specific customers, Mainline has stated that "Rombalski's solicitation of Mainline customers includes a large Mainline customer that Rombalski and Benkendorf attempted to add as a customer exclusion to Rombalski's non-solicitation restrictive covenant."  (Compl. Par. 89).  Mainline also alleges that Wachowiak "failed to act on business opportunities for Mainline and instead forwarded the opportunities to Forsythe," and that Wachowiak solicited at least two large customers of Mainline.  (Compl. Par. 111, 112).  In addition, Mainline alleges that Carlquist, Lynch, and Meyer have participated in the solicitation of at least one of Mainline's customers with the other Defendants, and that Arroyo has participated in the solicitation of at least two of Mainline's customers.  (Compl. Par. 133, 152, 171, 191).  As discussed above, at this stage of the proceedings, Mainline cannot be expected to reveal in its complaint the identities

of customers in which Mainline has a proprietary interest.  Such information may be classified as confidential, and Mainline has not waived its right to seek a protective order before disclosing such information.  Based on the above, we deny Defendants' motion to dismiss Mainline's claims for unlawful solicitation of customers brought against Rombalski, Wachowiak, Carlquist, Lynch, Arroyo, and Meyer.  (Counts IX, XIII, XVII, XXII, XXVII, and XXXII).

## X.  Breach of Trade Secret and Confidential Information Covenants Claims

Defendants argue that Mainline's breach of trade secret and confidential information covenants claims should be dismissed.  As stated in regard to the ITSA claims, the separation agreement that allegedly superseded Carlquist's employment contains a covenant not to disclose trade secrets or confidential information, and therefore the superseding separation agreement does not support Defendants' argument that Mainline has not pled a valid breach of trade secret and confidential information covenants claim brought against Carlquist (Count XIX).  (Compl. Ex. F Par 3(h)).  In addition, as stated in regard to the ITSA claims, Mainline has adequately identified the misappropriated trade secrets and confidential information and the steps Mainline takes to protect such information.  Based on the above, we deny Defendants' motion to dismiss Mainline's claims for breach of trade secret and confidential information covenants brought against Rombalski, Carlquist, Lynch, Arroyo, Patel, and Suehr (Counts X, XIX, XXIV, XXVIII, XXXVII, and XL).

## XI.  CFAA Claim (Count XXX)

Defendants move to dismiss all claims, including the CFAA claim.  (Mot. 6).
Defendants contend in a conclusory fashion that none of the claims in the complaint
satisfy the notice pleading standard.  Defendants then indicate that "as demonstrated
below" Defendants will explain why each count fails.  (Mot. 6).  However,
Defendants fail to address the CFAA claim further in their motion to dismiss.
Mainline has pled sufficient facts to state a CFAA claim, including the fact that
Arroyo allegedly deleted 190 client proposals from a protected computer without
Mainline's authorization.  (Compl. Par. 454).  Defendants' conclusory statement that
Mainline has not met the notice pleading standard in regard to the claim is
unpersuasive.  Therefore, we deny the motion to dismiss the CFAA claim (Count
XXX).

**CONCLUSION**

Based on the foregoing analysis, we deny Defendants' motion to dismiss in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   May 20, 2010